UNITED STATES DISTRICT COURT
DISTRICT OF MARYLAND

KEONA JEFFERSON,

    Plaintiff,

    v.

JPMORGAN CHASE BANK, N.A.,

    Defendant.

Civil Action No. 24-2939-TDC

**MEMORANDUM OPINION**

Plaintiff Keona Jefferson has filed this civil action against Defendant JPMorgan Chase Bank, N.A. ("Chase"), in which she asserts claims under the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. §§ 1692–1692p, and state law claims arising from the repossession of her car by Chase. Chase has filed a Motion to Dismiss, which is fully briefed. Having reviewed the submitted materials, the Court finds that no hearing is necessary. *See* D. Md. Local R. 105.6. For the reasons set forth below, the Motion will be GRANTED.

**BACKGROUND**

On November 22, 2023, Jefferson purchased on credit a used 2020 Cadillac Escalade ("the Cadillac") from AutoNation Chevrolet Laurel ("AutoNation") in Laurel, Maryland. The transaction was memorialized in a retail installment sale contract, pursuant to which Jefferson agreed to make 75 monthly payments of $1,238.42 beginning on January 6, 2024. AutoNation retained a security interest in the Cadillac and had the option to repossess it if Jefferson were to default on her payments. At the time of the transaction, AutoNation assigned its interest in the contract to Chase.

Jefferson alleges that, on June 17, 2024, the Cadillac was "unlawfully repossessed by a company acting on behalf of Defendant without proper notice or due process as required by Maryland law and federal regulations." Am. Compl. ¶ 6, ECF No. 12. She further alleges that, on September 4, 2024, she provided Chase with a "Notice of Failure to Respond and Right to Cure, requesting adequate assurance of performance as required under [Uniform Commercial Code ("UCC")] § 2–609," as well as a "demand for documentation, including a Certificate of Loss or Expenses." Id. ¶ 7. Jefferson asserts that Chase "failed to provide any required documentation validating the alleged debt or repossession action" in violation of UCC § 2–609 and the FDCPA, 15 U.S.C. § 1692, and that she has "suffered financial harm, emotional distress, embarrassment, and negative impacts on credit due to Defendant's unlawful actions." Id. ¶¶ 8–9.

On September 4, 2024, Jefferson filed the original Complaint in this case in the Circuit Court for Prince George's County, Maryland. On October 9, 2024, Chase removed the case to this Court. In the currently operative Amended Complaint, Jefferson alleges four causes of action against Chase, numbered as follows: (1) violations of the FDCPA for "[f]ailure to validate the debt under 15 U.S.C. § 1692g," "[f]alse representations regarding the debt under 15 U.S.C. § 1692e," "[e]ngaging in conduct intended to harass, oppress, or abuse Plaintiff, contrary to 15 U.S.C. § 1692d," and "[u]tilizing unfair practices, in violation of 15 U.S.C. § 1692f," Am. Compl. ¶ 11; (2) a claim for breach of contract in violation of section 2–609 of the UCC, which Maryland has adopted as section 2–609 of the Maryland Commercial Code; (3) a claim for "Emotional Distress and Embarrassment," Am. Compl. ¶¶ 16–18; and (4) a claim for "Violation of Economic Rights and Unauthorized Use of [Personally Identifiable Information ("PII")]," id. ¶¶ 19–21. Jefferson seeks compensatory and punitive damages as well as injunctive and declaratory relief.

## DISCUSSION

In the Motion to Dismiss, Chase asserts the following arguments for dismissal pursuant to Federal Rule of Civil Procedure 12(b)(6): (1) each of Jefferson's FDCPA claims should be dismissed because Chase is not a debt collector as defined in the statute and, even if Chase were a debt collector, Jefferson fails to plead facts sufficient to state any cognizable claim; (2) Jefferson's breach of contract claim should be dismissed because section 2–609 of the Maryland Commercial Code does not apply to Jefferson's transaction to purchase the Cadillac and in any event does not provide a private right of action allowing an individual to file a civil action under that provision; (3) Jefferson's claim for "Emotional Distress and Embarrassment" should be dismissed because it must be construed as a claim for intentional infliction of emotional distress, and Jefferson fails to allege facts demonstrating that Chase's conduct was "extreme and outrageous" or that her emotional injuries were sufficiently severe to state such a claim; and (4) Jefferson's claim for "Violation of Economic Rights and Unauthorized Use of PII" should be dismissed because no such state common law tort exists. Am. Compl. at 2–3; Mot. Dismiss at 9–10, ECF No. 21-1.

**I.    Legal Standard**

To defeat a motion to dismiss under Rule 12(b)(6), the complaint must allege enough facts to state a plausible claim for relief. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). A claim is plausible when the facts pleaded allow "the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* Legal conclusions or conclusory statements do not suffice. *Id.* A court must examine the complaint as a whole, consider the factual allegations in the complaint as true, and construe the factual allegations in the light most favorable to the plaintiff. *Albright v. Oliver*, 510 U.S. 266, 268 (1994); *Lambeth v. Bd. of Comm'rs of Davidson Cnty.*, 407 F.3d 266, 268 (4th Cir. 2005). A self-represented party's complaint must be construed

3

liberally. *Erickson v. Pardus,* 551 U.S. 89, 94 (2007). However, "liberal construction does not mean overlooking the pleading requirements under the Federal Rules of Civil Procedure." *Bing v. Brivo Sys., LLC,* 959 F.3d 605, 618 (4th Cir. 2020).

## II.  Fair Debt Collection Practices Act

As to the FDCPA claims in Count 1, Chase primarily argues they must be dismissed on the grounds that all of the cited provisions of the FDCPA apply only to the conduct of a "debt collector," but Chase is not a "debt collector" pursuant to the FDCPA's definition of that term. Mot. Dismiss at 5.

In Count 1, Jefferson asserts violations of the FDCPA provisions in 15 U.S.C. §§ 1692d, 1692e, 1692f, and 1692g. Each of these provisions prohibits certain actions taken by a "debt collector" in the course of debt collection activities. *See* 15 U.S.C. § 1692d ("A debt collector may not engage in any conduct the natural consequence of which is to harass, oppress, or abuse any person in connection with the collection of a debt."); 15 U.S.C. § 1692e ("A debt collector may not use any false, deceptive, or misleading representation or means in connection with the collection of any debt."); 15 U.S.C. § 1692f ("A debt collector may not use unfair or unconscionable means to collect or attempt to collect any debt."); 15 U.S.C. § 1692g ("Within five days after the initial communication with a consumer in connection with the collection of any debt, a debt collector shall, unless the following information is contained in the initial communication or the consumer has paid the debt, send the consumer a written notice . . . ."). The term "debt collector" is defined in the FDCPA as "any person who uses any instrumentality of interstate commerce or the mails in any business the principal purpose of which is the collection of any debts, or who regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another." 15 U.S.C. § 1692a(6). This term generally includes "any

4

creditor who, in the process of collecting his own debts, uses any name other than his own which would indicate that a third person is collecting or attempting to collect such debts." *Id.* The FDCPA also provides for various exceptions to this definition, including that a "debt collector" does not include "any officer or employee of a creditor while, in the name of the creditor, collecting debts for such creditor." 15 U.S.C. § 1692a(6)(A).

Here, Jefferson has not alleged facts that would demonstrate that Chase meets this definition. In particular, she has not asserted facts showing that Chase, a lender, is engaged in a business "the principal purpose of which is the collection of any debts" or regularly collects or attempts to collect debts owed or due to "another." 15 U.S.C.§ 1692a(6). Rather, based on the contract for the sale of the Cadillac and its provision assigning AutoNation's interests to Chase, it is apparent that, for purposes of these activities, Chase was a creditor who, to the extent it was involved in any relevant activities, was collecting debts owed to Chase itself and thus was "collecting debts for such creditor," which excludes it from the definition of a "debt collector." 15 U.S.C. § 1692a(6)(A). The allegations, which assert that the repossession was effected by "a company acting on behalf of Defendant," Am. Compl. ¶ 6, also do not support the conclusion that Chase was directly seeking to collect its own debts using a different name, or that it otherwise met any other part of the definition of a debt collector.

Although Jefferson argues that Chase could be liable under the FDCPA for actions by third-party agents during the repossession, the opposite is true. When a third-party company engages in debt collection activities on behalf of a creditor, it is that third-party company, not the creditor, that is a "debt collector" under the FDCPA. *See* 15 U.S.C. § 1692a(6); *Henson v. Santander Consumer USA, Inc.*, 817 F.3d 131, 135–36 (4th Cir. 2016) ("With limited exceptions, a debt collector . . . collects debt on behalf of a creditor. A creditor, on the other hand, is a person to

whom the debt is owed, and when a creditor collects its debt for its own account, it is not generally acting as a debt collector.").

As support for her position, Jefferson principally relies upon *Heintz v. Jenkins*, 514 U.S. 291 (1995), which she cites for the proposition that "the FDCPA applies broadly to financial institutions and attorneys involved in debt collection." Opp'n at 2, ECF No. 23; *see also* Am. Compl. ¶ 12. Although *Heintz* involved a bank seeking to recover the unpaid balance on a car loan, the defendant in that case was not the bank itself, but the bank's attorney and law firm, which had sued the plaintiff on the bank's behalf. *See Heintz*, 514 U.S. at 293. The United States Supreme Court held that the FDCPA "applies to attorneys who 'regularly' engage in consumer-debt-collection activity, even when that activity consists of litigation," but it did not address whether a creditor such as the bank is a "debt collector" under the FDCPA. *Id.* at 299. Where the allegations in the Amended Complaint do not show that Chase is a debt collector under the FDCPA, the FDCPA claims will be dismissed for failure to state a claim. *See Henson*, 817 F.3d at 137–38 (dismissing the plaintiff's FDCPA claims where the plaintiff failed to allege facts supporting the conclusion that the defendant was a debt collector within the meaning of 15 U.S.C. § 1692a(6)). Accordingly, the Court need not and will not address Chase's remaining arguments relating to those claims.

### III.   Breach of Contract

In the Motion, Chase argues that Jefferson's breach of contract claim, which is based on section 2–609 of the Maryland Commercial Code, should be dismissed because that provision, as well as all of Title 2 of the Maryland Commercial Code, does not apply to the sale of the Cadillac. In addition, Chase argues that Jefferson's claim fails because section 2–609 of the Maryland Commercial Code does not provide a private right of action.

Section 2–609 of the Maryland Commercial Code provides that:

(1) A contract for sale imposes an obligation on each party that the other's expectation of receiving due performance will not be impaired. When reasonable grounds for insecurity arise with respect to the performance of either party the other may in writing demand adequate assurance of due performance and until he receives such assurance may if commercially reasonable suspend any performance for which he has not already received the agreed return.

(2) Between merchants the reasonableness of grounds for insecurity and the adequacy of any assurance offered shall be determined according to commercial standards.

(3) Acceptance of any improper delivery or payment does not prejudice the aggrieved party's right to demand adequate assurance of future performance.

(4) After receipt of a justified demand failure to provide within a reasonable time not exceeding thirty days such assurance of due performance as is adequate under the circumstances of the particular case is a repudiation of the contract.

Md. Code Ann., Com. Law § 2–609 (LexisNexis 2013).

As to Chase's threshold argument that the transaction at issue is not subject to Title 2 or section 2–609, the Court notes that the Court of Appeals of Maryland, now known as the Supreme Court of Maryland, has characterized a transaction involving the sale of a vehicle on credit as both a sales transaction under Title 2 of the Maryland Commercial Code and a secured transaction under Title 9 of the Maryland Commercial Code. *See Scott v. Ford Motor Credit Co.*, 691 A.2d 1320, 1321, 1322 (Md. 1997). It is thus not clear that Title 2 and section 2–609 can never apply to the transaction at issue. As for the threshold argument that there is no private right action under section 2–609, the Court notes that the Maryland Court of Special Appeals, now known as the Appellate Court of Maryland, has considered section 2–609 in conjunction with a breach of contract claim under section 2–610. *Rad Concepts, Inc. v. Wilks Precision Instrument Co.*, 891 A.2d 1148, 1162 (Md. Ct. Spec. App. 2006). Section 2–610 provides that when "either party repudiates the contract with respect to a performance not yet due the loss of which will substantially impair the value of

the contract to the other, the aggrieved party may . . . [r]esort to any remedy for breach." Md. Code Ann., Com. Law § 2–610; *see Rad Concepts, Inc.*, 891 A.2d at 1162. The Court thus does not readily conclude that a plaintiff invoking section 2–609 cannot assert a breach of contract claim if routed through section 2–610.

Nevertheless, assuming without deciding that Jefferson can overcome these threshold arguments, the Court finds that the allegations do not support a plausible claim for relief based on sections 2–609 and 2–610. These provisions center on the circumstances under which a party to a contract for a sale of goods may make a demand for performance when it does not appear that the contract will be fulfilled, and when the failure to respond to such a demand may constitute a repudiation of the contract. *See* Md. Code Ann., Com. Law §§ 2–609, 2–610; *Rad Concepts, Inc.*, 891 A.2d at 1162. Maryland courts, as well as other courts considering identical provisions of the UCC, apply such provisions to circumstances in which one party has failed to provide either the goods or the payment, such that there are "reasonable grounds for insecurity" with "respect to the performance of either party," and the other party makes a written request for "adequate assurance of due performance" before the performance is actually due. Md. Code Ann., Com. Law § 2–609; *see Rad Concepts, Inc.*, 891 A.2d at 1162–63 (finding that, under sections 2–609 and 2–610, after a party shipped goods and made multiple requests for payment that were not answered, that party could suspend future shipments until payment or "acceptable assurances" were received); *BRC Rubber & Plastics, Inc. v. Cont'l Carbon Co.*, 981 F.3d 618, 622, 627 (7th Cir. 2020) (finding that, under a state law adopting section 2–609 of the UCC, the defendant seller gave the plaintiff buyer "reasonable grounds for doubting that it would perform" and "then repudiated by failing to provide adequate assurance that it would continue to perform," such that the buyer was entitled to terminate the contract and seek damages). Section 2–609 thus "addresses the problem that arises when one

8

party to a contract" for the sale of goods "has reasonable concerns about another party's ability or intent to fulfill its promises before performance is actually due." *BRC Rubber & Plastics, Inc.*, 981 F.3d at 623.

Here, section 2–609 is plainly inapplicable. By the time of the events at issue in the Amended Complaint, Jefferson had already received all the performance that was due under the contract for a sale of goods in that the vehicle had been transferred to her. At that point, all that was left to be performed was a financing agreement. To the extent that one party could have made a demand for "adequate assurance of due performance" on the contract for the sale of goods, it would have been Chase seeking that Jefferson provide assurances that she would make the monthly payments before the repossession occurred. In the Amended Complaint, however, Jefferson, alleges that the "demand" for "adequate assurance of due performance" was her demand to Chase for "validation and documentation regarding the alleged debt," Opp'n at 3, which does not constitute a demand for performance on the contract, whether for delivery of the goods or payment for the goods. Other than citing to a case that does not exist, Jefferson provides no authority for how such a request by the party who has not made all required car payments, and a failure to respond to it, could constitute a repudiation of the sales contract by Chase under sections 2–609 and 2–610, much less one that "substantially impaired the value of the contract." *Rad Concepts, Inc.*, 891 A.2d at 1162. Because Jefferson seeks to invoke section 2–609 in a manner inconsistent with the provisions of either section 2–609 or section 2–610, the Court will dismiss Jefferson's breach of contract claim based on those provisions for failure to state a plausible claim for relief.

IV.   **Intentional Infliction of Emotional Distress**

Chase next argues that Jefferson's claim for "Emotional Distress and Embarrassment" in Count 3 must be dismissed for failure to state a claim. Although Jefferson does not specify the authority for her claim, she cites *Hamilton v. Ford Motor Credit Co.*, 502 A.2d 1057 (Md. Ct. Spec. App. 1986), which examined a common law claim of intentional infliction of emotional distress ("IIED") in the context of a debt collection relating to, and repossession of, a vehicle purchased on credit. *See id.* at 1062–65. Where Maryland law does not recognize a tort for negligent infliction of emotional distress, *see id.* at 1065, the Court will construe Count 3 as asserting an IIED claim.

Under Maryland law, the tort of IIED has four elements: "(1) The conduct must be intentional or reckless; (2) The conduct must be extreme and outrageous; (3) There must be a causal connection between the wrongful conduct and the emotional distress; (4) The emotional distress must be severe." *Harris v. Jones*, 380 A.2d 611, 614 (Md. 1977).

The Court concludes that, at minimum, Jefferson has failed to allege that her emotional distress was sufficiently severe to state a claim of IIED. Typically, a plaintiff must allege "evidentiary particulars" that would support the conclusion that the plaintiff suffered severe emotional distress. *Manikhi v. Mass Transit Admin.*, 758 A.2d 95, 115 (2000) (quoting *Harris*, 380 A.2d at 617). To meet this element, the plaintiff must have suffered "an emotional response so acute that no reasonable person could be expected to endure it" such that the plaintiff was "unable to function." *Hamilton*, 502 A.2d at 1064. Here, however, Jefferson states only that she "has suffered financial harm, emotional distress, embarrassment, and negative impacts on credit due to Defendant's unlawful actions" and that Chase caused her "significant emotional distress and embarrassment," without any additional facts. Am. Compl. ¶¶ 9, 18. She does not allege

concrete facts demonstrating "with reasonable certainty the nature, intensity or duration of the alleged emotional injury," such as facts about whether she sought psychological treatment, "how long the treatment lasted, whether it was successful or is still continuing, whether it was periodic or intensive, and so forth." *Manikhi*, 758 A.2d at 115 (concluding that the plaintiff, who had alleged severe physical and verbal sexual harassment, did not sufficiently allege severe emotional distress where the facts alleged about her emotional distress were that she sought medical treatment, was fearful at work, had to change job sites, and had to be on alert constantly); *Hamilton* 502 A.2d at 1064–65 (finding that evidence that the plaintiff was upset, had difficulty sleeping, and was embarrassed was insufficient to demonstrate severe emotional distress). Where Jefferson has provided no facts illustrating the severity of her emotional distress and nowhere alleges that she required treatment for any emotional injury, the Court concludes that Jefferson has not pleaded the "evidentiary particulars" necessary to state a claim for IIED. *Manikhi*, 758 A.2d at 115 (quoting *Harris*, 380 A.2d at 617). Accordingly, Jefferson's claim in Count 3 for "Emotional Distress and Embarrassment" will be dismissed on this basis, and the Court need not and will not reach Chase's remaining arguments relating to this claim.

V.     **Violation of Economic Rights and Unauthorized Use of PII**

Finally, Chase argues that Jefferson's claim in Count 4 for "Violation of Economic Rights and Unauthorized Use of PII" should be dismissed because such a tort does not exist under Maryland law. Indeed, Jefferson cites no statute or case law providing for such a cause of action. Rather, Jefferson cites only to the "Maryland Commercial Law Article, Title 14, which protects consumers from deceptive trade practices and misuse of personal information." Am. Compl. ¶ 20. Where Title 14 of the Maryland Commercial Code contains at least 50 different subtitles, the Court

cannot discern under which subtitle Jefferson is proceeding. Moreover, Jefferson's factual allegations are conclusory, stating without factual development that:

> Defendant engaged in the unauthorized use of Plaintiff's PII in violation of the Maryland Commercial Law Article, Title 14, which protects consumers from deceptive trade practices and misuse of personal information.
>
> Defendant's actions violated Plaintiff's rights by engaging in unauthorized transactions involving Plaintiff's information and failing to secure or verify proper documentation for the repossession.

*Id.* ¶¶ 20–21. Where Jefferson has failed to identify a specific legal provision giving rise to a cause of action, and where Jefferson has failed to allege non-conclusory facts substantiating her cause of action, the Court will dismiss her claim for "Violation of Economic Rights and Unauthorized Use of PII." *See Beaudett v. City of Hampton*, 775 F.2d 1274, 1278 (4th Cir. 1985) (stating that, although courts are expected to construe self-represented complaints liberally, they are not required to "conjure up questions never squarely presented to them"). Even if the Court were to identify a specific Maryland law provision barring the misuse of PII, the Amended Complaint fails to state a plausible claim for relief because it alleges no facts about what PII was used and how that use was improper or violated the law. *See Bing*, 959 F.3d at 618 (affirming a district court's dismissal of a self-represented complaint where the plaintiff presented "no facts to support his conclusory allegations").

## CONCLUSION

For the foregoing reasons, Chase's Motion to Dismiss will be GRANTED, and the Amended Complaint will be DISMISSED WITHOUT PREJUDICE. A separate Order shall issue.

Date: June 4, 2025

THEODORE D. CHUANG
United States District Judge